UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

RONALD J. SMITH and NANCY L. SMITH,
Husband and Wife,

     Plaintiffs,

v.

ENCORE CREDIT CORPORATION; BEAR
STEARNS RESIDENTIAL MORTGAGE
CORPORATION; OPTION ONE MORTGAGE
CORPORATION; MOTION FINANCIAL;
ELLYN KLEIN GROBER; and DOES 1-10,

     Defendants.



CASE NO.

JUDGE:

JUDGE POLSTER

COMPLAINT FOR FRAUD,
DECLARATORY RELIEF,
OHIO CONSUMER SALES
PRACTICES ACT, VIOLATIONS
OF FEDERAL HOME LENDING
STATUTES, CONSPIRACY,
RICO, AND OTHER RELIEF

MAG. JUDGE McHARGH

Plaintiffs sue Defendants for damages and other relief, and state:

**A.** Parties and Jurisdiction

1. Plaintiffs Ronald J. Smith and Nancy L. Smith are of majority age and are
residents of the State of Ohio residing in their home located at 1625 Gully
Top Lane, Canfield, Ohio, 44406, and are "consumers" as defined in Ohio
Revised Code (hereafter "ORC") sec. 1345.01.

2. Defendant ENCORE CREDIT CORPORATION (hereafter "ENCORE")
was, at all material times hereto, a corporation which was registered in
California and Illinois which was acquired by Defendant BEAR STEARNS
RESIDENTIAL MORTGAGE CORPORATION ("BSRMC") as of October
29, 2007, and now operates as BEAR STEARNS RESIDENTIAL
MORTGAGE d/b/a ENCORE CREDIT CORPORATION. At all times
material hereto, Defendant ENCORE engaged in a continuous and
systematic course of, and actively sought business within the State of

1

Ohio, thus satisfying the minimum contacts requirements under the United States Supreme Court's decision in *International Shoe v. Washington* in order to render Defendant ENCORE subject to the jurisdiction of this Court and amenable to being sued within this jurisdiction. Defendant ENCORE was also, at all times material hereto, engaged in the business of effecting and soliciting consumer transactions within the State of Ohio and is thus a "seller" as defined by ORC sec. 1345.21(C); a "supplier" as defined by ORC sec. 1345.01(c) and the Ohio Consumer Sales Practices Act, ORC sec. 1345.01(C); a "creditor" as defined by the Federal Truth In Lending Act (15 USC sec. 1602(f)); and an "enterprise" as defined by ORC sec. 2923.31(C) as an individual engaged in the business of effecting or soliciting consumer transactions. At all times material hereto, Defendant ENCORE's principal place of business was located at 1901 Butterfield Road, Suite 1010, Downer's Grove, Illinois 60516, and as further described herein, claimed ownership and serviced Plaintiff's mortgage loan.

3. Defendant BSRMC is the successor-in-interest to Defendant ENCORE relative to the mortgage which is part of the subject matter of this action. Defendant BSRMC is incorporated in the State of Delaware, but at all times material hereto, Defendant BSRMC, by virtue of its acquisition of Defendant ENCORE, engaged in a continuous and systematic course of, and actively sought business within the State of Ohio, thus satisfying the minimum contacts requirements under the United States Supreme Court's

decision in *International Shoe v. Washington* in order to render Defendant BSRMC subject to the jurisdiction of this Court and amenable to being sued within this jurisdiction. Defendant BSRMC was also at all times material hereto by virtue of its acquisition of Defendant ENCORE, in an agency relationship with Defendant ENCORE and is thus liable for all acts committed by Defendant ENCORE. At all times material hereto, Defendant BSRMC engaged in the business of effecting and soliciting consumer transactions within the State of Ohio and is thus a "seller" as defined by ORC sec. 1345.21(C); a "supplier" as defined by ORC sec. 1345.01(c) and the Ohio Consumer Sales Practices Act, ORC sec. 1345.01(C); a "creditor" as defined by the Federal Truth In Lending Act (15 USC sec. 1602(f)); and an "enterprise" as defined by ORC sec. 2923.31(C) as an individual engaged in the business of effecting or soliciting consumer transactions.

4. Defendant OPTION ONE MORTGAGE CORPORATION ("OPTION ONE") is incorporated in the State of California with its principal place of business being located at 6501 Irvine Center Drive, Irvine, California 92618. At all times material hereto, Defendant OPTION ONE engaged in a continuous and systematic course of business within the State of Ohio, thus satisfying the minimum contacts requirements under the United States Supreme Court's decision in *International Shoe v. Washington* in order to render Defendant OPTION ONE subject to the jurisdiction of this Court and amenable to being sued within this jurisdiction and venue. At all times

material hereto, Defendant OPTION ONE was in an agency relationship with Defendant ENCORE and is thus liable for all acts committed by Defendant ENCORE. Defendant OPTION ONE was also, by virtue of its agency relationship with Defendant ENCORE, at all times material hereto engaged in the business of effecting and soliciting consumer transactions within the State of Ohio and is thus a "seller" as defined by ORC sec. 1345.21(C); a "supplier" as defined by ORC sec. 1345.01(c) and the Ohio Consumer Sales Practices Act, ORC sec. 1345.01(C); a "creditor" as defined by the Federal Truth In Lending Act (15 USC sec. 1602(f)); and an "enterprise" as defined by ORC sec. 2923.31(C) as an individual engaged in the business of effecting or soliciting consumer transactions.

5.  Defendant MOTION FINANCIAL ("MOTION") and their representative agents were, at all times material as they held themselves out to be, "mortgage brokers" as defined by ORC sec. 1322.01(E), and were organized under the laws of the State of Ohio and thus amenable to suit within this jurisdiction, with their principal place of business being located at 4866 Cooper Road, #106, Cincinnati, Ohio 45242. At all times material hereto, Defendant MOTION and its agents engaged in the continuous and systematic business of effecting and soliciting consumer transactions within the State of Ohio and is thus a "seller" as defined by ORC sec. 1345.21(C); a "supplier" as defined by ORC sec. 1345.01(c) and the Ohio Consumer Sales Practices Act, ORC sec. 1345.01(C); a "creditor" as defined by the Federal Truth In Lending Act (15 USC sec. 1602(f)); and an

4

"enterprise" as defined by ORC sec. 2923.31(C) as an individual engaged in the business of effecting or soliciting consumer transactions.

6. Defendant ELLYN KLEIN GROBER ("GROBER") is and was, at all times material hereto, a natural person over the age of eighteen (18) who was employed by Defendant MOTION as a mortgage broker and was thus an authorized agent of Defendant MOTION. All actions committed by Defendant GROBER are thus attributable to Defendant MOTION.

7. Plaintiffs are unaware of the true identities and capacities of Defendants DOES 1-10 inclusive, and therefore sue these Defendants by fictitious names. Plaintiffs are informed and believe, pursuant to the course of events and facts set forth herein, that DOES 1-10 are responsible, together with the named Defendants above, for the acts and omissions set forth herein and that the Plaintiffs' injuries and damages were caused, together with the named Defendants hereinabove, by Defendants DOES 1-10. At the appropriate point in this litigation and in connection with matters to be revealed in formal discovery, Plaintiffs shall seek leave to amend their Complaint to add additional facts and party Defendants pursuant to and provided by the Federal Truth In Lending Act.

8. Jurisdiction of the subject matter in this Court is proper pursuant to 28 U.S.C. sec. 1331, as Plaintiffs have sought relief under multiple Federal Statutes.

9. Jurisdiction of the Federal claims is proper in this Court pursuant to 15 U.S.C. sec. 1601 et. seq. and 15 U.S.C. sec. 1640(e).

5

10. Jurisdiction over the state-law claims is proper under the doctrine of Supplemental or Pendent Jurisdiction pursuant to 28 U.S.C. sec. 1367(a).

11. The cause of action herein arose in Mahoning County, Ohio by virtue of a mortgage loan and related inter-temporal transactions associated therewith which concern the Plaintiffs' primary residential real estate which is located at 1625 Gully Top Lane, Canfield, Ohio 44406 which is located within Mahoning County which is within this Judicial District.

12. Venue of this action is proper within this Court as at least one named Defendant is subject to suit within this Court, and thus all Defendants are properly sued in this Court.

**B.** <u>Material Facts Common to All Counts</u>

13. Prior to January 7, 2004, Plaintiffs had several discussions via telephone with authorized agents of Defendant MOTION concerning a possible refinance on the mortgages on their home. Plaintiffs directed Defendant MOTION to extract equity from their home for the purpose of paying off credit cards and other persona loans due to a deteriorating income stream versus prior year and also to be able to fund the March, 2004 mortgage payments. Plaintiffs believed that the best way to accomplish this would be through a fixed-rate loan at the lowest interest rate for which Plaintiffs qualified and with a monthly payment plan which Plaintiffs could afford given their financial situation as to income and expenses.

14. On or about January 7, 2004, Defendant GROBER, as authorized agent of Defendant MOTION, affirmatively represented to Plaintiffs that Plaintiffs qualified for and would be able to obtain a fixed rate mortgage loan in the principal amount of $528,500.00. In connection therewith, Defendant GROBER prepared or caused to be prepared a Uniform Residential Loan Application which was executed by Defendant GROBER on January 7, 2004. The subject Application contained a mechanically printed checkmark next to the box designated "fixed rate". Plaintiffs executed the Application on January 9, 2004 and returned same to Defendant MOTION.

15. Defendant MOTION also provided to Plaintiffs, on or about January 7, 2004, an "early Truth In Lending Statement" ("TIL") which set forth that Plaintiffs were obtaining a fixed rate mortgage loan.

16. However, Defendant MOTION failed to provide to Plaintiffs, on or about January 7, 2004 and prior to the date that Plaintiffs signed the Uniform Residential Loan Application, either a Good Faith Estimate ("GFE") showing no loan programs, or a early TIL for the sub-prime, adjustable rate, six (6) month Libor mortgage loan program.

17. In or about early February, 2004, Plaintiffs were informed by Defendant GROBER that the fixed rate loan which Plaintiffs initially qualified for would not provide a sufficient loan-to-value ratio to enable Plaintiffs to obtain a cash-out refinance program. Plaintiffs were also advised that the only program then available to enable Plaintiffs to obtain a cash-out

refinance would be an adjustable rate program requiring an appraised value of their property of $630,000.00.

18. Plaintiffs were also told that "time was running out" and that they were "essentially out of options". In reliance thereon, Plaintiffs agreed to the new adjustable rate program.

19. Thereafter but still in early February 2004, Defendant GROBER enlisted the services of non-party Statewide Appraisal to prepare an appraisal of Plaintiffs' property.

20. Several days later, Plaintiffs were presented with an e-mail copy of the appraisal which showed an appraised value of the property of approximately $570,000.00, which was insufficient to fund the cash-out program.

21. Plaintiffs were then contacted by Defendant GROBER, who advised that she would speak to the appraiser to re-schedule another appraisal.

22. A second appraisal was performed by Statewide Appraisal on or about February 17, 2004 which now showed an appraised value of the property of $630,000.00 which enabled to the loan program to be approved.

23. As Plaintiffs now had less than two weeks remaining before they would begin defaulting on numerous obligations, Plaintiffs agreed to proceed with the closing on the adjustable rate loan program.

24. On or about March 5, 2004, Defendants MOTION and ENCORE presented Plaintiffs with a literal pile of loan documents at the closing on

the refinance loan. Plaintiffs were directed to sign the loan documents without being given time to review them or suggest modifications.

25. Included within the loan documents was another copy of the Uniform Residential Loan Application previously prepared by Defendant GROBER and provided by Defendant GROBER to the Plaintiffs on January 9, 2004. However, unbeknownst to the Plaintiffs at the time (that being at the closing), the version of the Application within the loan document pile presented to the Plaintiffs at the closing had been altered by a partial obliteration of the mechanical checkmark next to the box labeled "fixed rate", and the addition of a handwritten "X" in the box labeled "Adjustable Rate Mortgage (ARM)". The handwritten "X" was not made by either of the Plaintiffs, and this version of the document was not executed by any of the parties.

26. As a direct and proximate result of the unilateral and material alteration of the Application and the pressures placed on Plaintiffs manufactured by Defendants GROBER, MOTION, and ENCORE, on or about March 5, 2004, said Defendants placed Plaintiffs into a sub-prime adjustable rate mortgage program with a two (2) year fixed rate and an adjustable rate every six (6) months thereafter.

27. The end result of the false and misleading representations and material omissions of Defendants MOTION and ENCORE as to the loan program which Plaintiffs requested and were told by said Defendants that they qualified for, when viewed against the later actions of these Defendants

as to which loan program the Plaintiffs were later told that they could only qualify for, which was told to Plaintiffs at a point less than 3 weeks before Plaintiffs would begin defaulting on obligations (and under circumstances where these Defendants had actual knowledge that the "only" loan program which Plaintiffs allegedly qualified for was in direct conflict with the original Uniform Residential Loan Application, early TIL, and Plaintiffs' stated intentions and directions to said Defendants at the time of original application for the loan), fraudulently caused Plaintiffs to execute predatory loan documents.

28. At no time whatsoever did Defendants MOTION and ENCORE ever advise Plaintiffs that:

(a) the mortgage loan being processed was not in their best interest;

(b) the terms of the mortgage loan being processed were less favorable than the fixed-rate loan which Defendant GROBER previously advised Plaintiffs that they qualified for;

(c) that the adjustable rate mortgage loan was an inter-temporal transaction (transaction where terms, risks, or provisions at the commencement of the transaction differ at a later time) on which Plaintiffs had only qualified at the initial "teaser" fixed rate but had not and could not qualify for the loan once the interest rate terms changed after year 2;

(d) that as a result of the change in interest rate after year 2 that Plaintiffs would not be able to meet their financial obligations on

the loan given their income and expense history previously provided to Defendant GROBER;

(e) that Plaintiffs would likely be placed in a position of default, foreclosure, and deficiency judgment upon not being able to meet their increased loan obligations once the fixed rate interest period expired and the adjustable rate applied;

(f) that the originating "lender", that being Defendant ENCORE, had no intention of retaining ownership interest in the mortgage loan or fully servicing same and in fact may have already presold the loan, prior to closing, to a third party mortgage aggregator;

(g) that the mortgage loan was actually intended to be repeatedly sold and assigned to multiple third parties, including one or more mortgage aggregators and investment bankers (including but not limited to Defendants DOES 1-10), for the ultimate purpose of bundling the Plaintiffs' mortgage with hundreds or perhaps thousands of others as part of a companion, support, or other tranche in connection with the creation of a REMIC security known as a Collateralized Mortgage Obligation ("CMO"), also known as a "mortgage-backed security" to be sold by a securities firm (and which in fact ended up as collateral for Bear Stearns Asset-Backed Securities LLC Asset-Backed Certificates Series 2004-HES, created the same year as the closing);

(h) that the mortgage instrument and Promissory Note may be sold, transferred, or assigned separately to separate third parties so that the later "holder" of the Promissory Note may not be in privity with or have the legal right to foreclose in the event of default (which in fact occurred, as the plaintiff in the state court foreclosure action [identified herein *infra*] admitted in that proceeding that it did not have the original note);

(i) that in connection with the multiple down line resale and assignment of the mortgage and Promissory Note that assignees or purchasers of the Note may make "pay downs" against the Note which may effect the true amount owed by the Plaintiffs on the Note;

(j) that a successive assignee or purchaser of the Note and Mortgage may not, upon assignment or purchase, unilaterally impose property insurance requirements different from those imposed as a condition of the original loan (also known as prohibition against increased forced-placed coverage) without the Plaintiffs' prior notice and consent;

29. As a result of the closing and in connection therewith, Defendants GROBER, MOTION, and ENCORE placed the Plaintiffs into a sub-prime adjustable rate mortgage program with a two (2) year fixed and adjustable rate every six (6) months thereafter with a misleading initial payment schedule which showed "fixed" payments and with the final loan

documents spelling out "level" payments over the entire course of the loan, creating the impression as to a payment schedule which was untrue and in fact false.

30. As a direct and proximate result of the actions of the Defendants, Plaintiffs were placed into an adjustable rate mortgage program which Defendants knew that Plaintiffs did not and could not qualify for once the interest rate changed over the life of the loan, and which loan was "approved" based at least in part on the "revised" appraisal which was done at the request of Defendant GROBER and for the benefit of the Defendants.

31. Prior to the closing, Defendant ENCORE failed to provide to Plaintiffs the preliminary disclosures required by the Truth-In-Lending Act pursuant to 12 CFR (also known as and referred to herein as "Regulation Z) sec. 226.17 and 18, and failed to provide the preliminary disclosures required by the Real Estate Settlement Procedures Act ("RESPA") pursuant to 24 CFR sec. 3500.6 and 35007, otherwise known as the GFE.

32. Defendant ENCORE also intentionally failed and/or refused to provide Plaintiffs with various disclosures which would indicate to the Plaintiffs that the consumer credit contract entered into was void, illegal, and predatory in nature due in part to the fact that the final TIL showed a "fixed rate" schedule of payments, but did not provide the proper disclosures of the actual contractually-due amounts and rates.

13

33. Defendants failed and/or refused to provide a HUD-1 Settlement Statement at the closing which reflected the true cost of the consumer credit transaction. As Defendants failed to provide an accurate GFE or Itemization of Amount Financed ("IOAF"), there was no disclosure of a Yield Spread Premium ("YSP", which is required to be disclosed by the Truth-In-Lending Act) and thus no disclosure of the true cost of the loan.

34. As a direct and proximate result of these failures to disclose as required by the Truth–In–Lending Act, Defendant MOTION received a YSP in the amount of $10,570.00 without preliminary disclosure, which is a *per se* violation of 12 CFR sec. 226.4(a), 226.17 and 18(d) and (c)(1)(iii). The YSP raised the interest rate by 1.20% which was completely unknown to or approved by the Plaintiffs, as they did not received the required GFE or IOAF.

35. In addition, the completely undisclosed YSP was not disclosed by Defendant MOTION in their broker contract, which contract was blank in the area as to fees to be paid to Defendant MOTION. This is an illegal kickback in violation of 12 USC sec. 2607 as well as Ohio law which gives rise to all damages claims for all combined broker fees, costs, and attorneys' fees.

36. The Amount Financed within the TIL is also understated by $430.00, which is a material violation of 12 CFR sec. 226.17 and 18, in addition to 15 USC sec. 1602(u), as the Amount Financed must be completely accurate with no tolerance.

14

37. Defendants were under numerous legal obligations as fiduciaries and had the responsibility for overseeing the purported loan consummation to insure that the consummation was legal, proper, and that Plaintiffs received all legally required disclosures pursuant to the Truth-In-Lending Act and RESPA both before and after the closing.

38. Plaintiffs, not being in the consumer lending, mortgage broker, or residential loan business, reasonably relied upon the Defendants to insure that the consumer credit transaction was legal, proper, and complied with all applicable laws, rules, and Regulations.

39. At all times relevant hereto, Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four (4) installments and was initially payable to the person the subject of the transaction, rendering Defendants "creditors" within the meaning of the Truth-In-Lending Act, 15 U.S.C. sec. 1602(f) and Regulation Z sec. 226.2(a)(17).

40. On or about March 5, 2004 at the closing, Plaintiffs executed Promissory Notes and Security Agreements in favor of Defendants ENCORE and OPTION ONE. These transactions designated by Defendants as Loan No. 86512, extended consumer credit which was subject to a finance charge and which was initially payable to the Defendants.

41. As part of the consumer credit transaction the subject of the closing, Defendants retained a security interest in 1625 Gully Top Lane, Canfield, Ohio 44406, which was Plaintiffs' principal residential dwelling.

42. Defendants engaged in a pattern and practice of defrauding Plaintiffs in that, during the entire life of the mortgage loan, Defendants failed to properly credit payments made; incorrectly calculated interest on the accounts; and have failed to accurately debit fees. At all times material, Defendants had actual knowledge that the Plaintiffs' accounts were not accurate but that Plaintiffs would make further payments based on Defendants' inaccurate accounts.

43. Plaintiffs made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiffs' accounts.

44. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs overpaid in interest.

45. Defendants also utilized amounts known to the Defendants to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

46. Defendants' violations were all material in nature under the Truth-In-Lending Act.

47. Said violations, in addition to the fact that Plaintiff Nancy J. Smith did not receive two (2) Notices of Right to Cancel, constitute violations of 15 USC sec. 1635(a) and (b) and 12 CFR sec. 226.23(b), and are thus a

legal basis for and legally extend Plaintiffs' right to exercise the remedy of rescission.

48. Defendants ENCORE and MOTION assigned the Note and mortgage to Defendant OPTION ONE, which did not take these instruments in good faith or without notice that the instruments were invalid or that Plaintiffs had a claim in recoupment. Pursuant to ORC sec. 1303.32(A)(2)(b)(c) and (f), Defendant OPTION ONE is not a holder in due course and is thus liable to Plaintiffs to the same extent as Defendant ENCORE.

49. Non-party LaSalle Bank National Association, as Trustee for Certificate Holders of Bear Stearns Asset-Backed Securities LLC Asset-Backed Certificate series 2004-HES, eventually filed a civil action for foreclosure against Plaintiffs in the Court of Common Pleas of Mahoning County, Ohio under case number 2005-CV-03869, with the Judgment Entry of Foreclosure being entered on or about January 12, 2007.

50. On information and belief and given that the consumer credit transaction was an inter-temporal transaction with multiple assignments as part of an aggregation and the creation of a REMIC tranche itself a part of a predetermined and identifiable CMO, all Defendants shared in the illegal proceeds of the transaction; conspired with each other to defraud the Plaintiffs out of the proceeds of the loan; acted in concert to wrongfully deprive the Plaintiffs of their residence; acted in concert and conspiracy to essentially steal the Plaintiffs' home and/or convert the Plaintiffs' home

without providing Plaintiffs reasonably equivalent value in exchange; and conducted an illegal enterprise within the meaning of the RICO statute.

51. On information and belief and given the volume of residential loan transactions solicited and processed by the Defendants, the Defendants have engaged in two or more instances of racketeering activity involving different victims but utilizing the same method, means, mode, operation, and enterprise with the same intended result.

## C. Claims for Relief

## COUNT I: VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT

52. Plaintiffs reaffirm and reallege paragraphs 1 through 51 hereinabove as if set forth more fully herein below.

53. In 1994, Congress enacted the Home Ownership Equity Protection Act ("HOEPA") which is codified at 15 USC sec. 1639 et seq. with the intention of protecting homeowners from predatory lending practices targeted at vulnerable consumers. HOEPA requires lenders to make certain defined disclosures and prohibits certain terms from being included in home loans. In the event of noncompliance, HOEPA imposes civil liability for rescission and statutory and actual damages.

54. Plaintiffs are "consumers" and each Defendant is a "creditor" as defined by HOEPA. In the mortgage loan transaction at issue here, Plaintiffs were required to pay excessive fees, expenses, and costs which exceeded more than 10% of the amount financed.

55. Pursuant to HOEPA and specifically 15 USC sec. 1639(a)(1), each Defendant is required to make certain disclosures to the Plaintiffs which are to be made conspicuously and in writing no later than three (3) days prior to the closing.

56. In the transaction at issue, Defendants were required to make the following disclosure to Plaintiffs by no later than three (3) days prior to March 5, 2004:

"You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home and any money you have put into it, if you do not meet your obligation under the loan."

57. Defendants violated HOEPA by numerous acts and material omissions, including but not limited to:

(a) failing to make the foregoing disclosure in a conspicuous fashion;

(b) engaging in a pattern and practice of extending credit to Plaintiffs without regard to their ability to repay in violation of 15 USC sec. 1639(h).

58. By virtue of the Defendants' multiple violations of HOEPA, Plaintiffs have a legal right to rescind the consumer credit transaction the subject of this action pursuant to 15 USC sec. 1635. This Complaint is to be construed, for these purposes, as formal and public notice of Plaintiff's Notice of Rescission of the mortgage and note.

59. Defendants further violated HOEPA by failing to make additional disclosures, including but not limited to Plaintiff Nancy L. Smith not

receiving the required disclosure of her right to rescind the transaction; the failure of Defendants to provide an accurate TIL disclosure; and the amount financed being understated by $430.00.

60. As a direct consequence of and in connection with Plaintiffs' legal and lawful exercise of their right of rescission, the true "lender" is required, within twenty (20) days of this Notice of Rescission, to:

(a) desist from making any claims for finance charges in the transaction;

(b) return all monies paid by Plaintiffs in connection with the transaction to the Plaintiffs;

(c) satisfy all security interests, including mortgages, which were acquired in the transaction.

61. Upon the true "lenders" full performance of its obligations under HOEPA, Plaintiffs shall tender all sums to which the true lender is entitled.

62. Based on Defendants' HOEPA violations, each of the Defendants is liable to the Plaintiffs for the following, which Plaintiffs demand as relief:

(a) rescission of the mortgage loan transactions;

(b) termination of the mortgage and security interest in the property the subject of the mortgage loan documents created in the transaction;

(c) return of any money or property paid by the Plaintiffs including all payments made in connection with the transactions;

(d) an amount of money equal to twice the finance charge in connection with the transactions;

(e) relinquishment of the right to retain any proceeds; and

(f) actual damages in an amount to be determined at trial, including attorneys' fees.

## COUNT II: VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT

63. Plaintiffs reaffirm and reallege paragraphs 1 through 51 herein as if specifically set forth more fully herein below.

64. As mortgage lenders, Defendants are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 USC sec. 2601 et seq.

65. In violation of 12 USC sec. 2607 and in connection with the mortgage loan to Plaintiffs, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed.

66. As a result of the Defendants' violations of RESPA, Defendants are liable to Plaintiffs in an amount equal to three(3) times the amount of charges paid by Plaintiffs for "settlement services" pursuant to 12 USC sec. 2607(d)(2).

## COUNT III: VIOLATIONS OF FEDERAL THUTH-IN-LENDING ACT

67. Plaintiffs reaffirm and reallege paragraphs 1 through 51 hereinabove as if set forth more fully herein below.

68. Defendants failed to include and disclose certain charges in the finance charge shown on the TIL statement, which charges were imposed on Plaintiffs incident to the extension of credit to the Plaintiffs and were required to be disclosed pursuant to 15 USC sec. 1605 and Regulation Z sec. 226.4, thus resulting in an improper disclosure of finance charges in violation of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18(d). Such undisclosed charges include a sum identified on the Settlement Statement listing the amount financed which is different from the sum listed on the original Note.

69. By calculating the annual percentage rate ("APR") based upon improperly calculated and disclosed amounts, Defendants are in violation of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18(c), 18(d), and 22.

70. Defendants' failure to provide the required disclosures provides Plaintiffs with the right to rescind the transaction, and Plaintiffs, through this public Complaint which is intended to be construed, for purposes of this claim, as a formal Notice of Rescission, hereby elect to rescind the transaction.

## COUNT IV: VIOLATION OF FAIR CREDIT REPORTING ACT

71. Plaintiffs reaffirm and reallege paragraphs 1 through 51 above as if set forth more fully herein below.

72. At all times material, Defendants qualified as a provider of information to the Credit Reporting Agencies, including but not limited to Experian, Equifax, and TransUnion, under the Federal Fair Credit Reporting Act.

73. Defendants wrongfully, improperly, and illegally reported negative information as to the Plaintiffs to one or more Credit Reporting Agencies, resulting in Plaintiffs having negative information on their credit reports and the lowering of their FICO scores.

74. Pursuant to 15 USC sec. 1681(s)(2)(b), Plaintiffs are entitled to maintain a private cause of action against Defendants for an award of damages in an amount to be proven at the time of trial for all violations of the Fair Credit Reporting Act which caused actual damages to Plaintiffs, including emotional distress and humiliation.

75. Plaintiffs are entitled to recover damages from Defendants for negligent non-compliance with the Fair Credit Reporting Act pursuant to 15 USC sec. 1681(o).

76. Plaintiffs are also entitled to an award of punitive damages against Defendants for their willful noncompliance with the Fair Credit Reporting Act pursuant to 15 USC sec. 1681(n)(a)(2) in an amount to be proven at time of trial.

## COUNT V: VIOLATIONS OF OHIO CONSUMER PRACTICES ACT

77. Plaintiffs reaffirm and reallege paragraphs 1 through 51 above as if set forth more fully herein below.

78. In providing various advices, mortgage brokerage services, lending services, and otherwise through its relations and communications with Plaintiffs, Defendants are subject to the provisions of the Ohio Consumer Sales Practices Act ("OCSPA"), ORC sec. 1345.01 et. seq.

79. In violation of the OCSPA, Defendants have committed unfair, deceptive, and unconscionable acts and practices in connection with the consumer transaction the subject of this action, including but not limited to:

    (a) taking advantage of Plaintiffs' inability to protect their interests because of their inability to fully understand the terms of the transactions due to the numerous failures of the Defendants to disclose material information; altering of material terms; and misrepresentation of the terms of the transaction;

    (b) charging Plaintiffs an excessive price for the services rendered;

    (c) rendering services to Plaintiffs with the knowledge that there was no reasonable probability of repayment of the obligations in full by Plaintiffs; and

    (d) by violations of the Ohio Mortgage Brokers Act set forth below and incorporated into this claim by reference.

80. Pursuant to ORC sec. 1345.09, Defendants are liable to Plaintiffs for each violation of the OCSPA in the amount equal to three (3) times actual damages in addition to Plaintiffs being entitled to injunctive relief barring any further violations pursuant to ORC sec. 1345.09(D).

24

## COUNT VI: VIOLATION OF OHIO MORTGAGE BROKER'S ACT

81. Plaintiffs reaffirm and reallege paragraphs 1 through 51 hereinabove as if set forth more fully herein below.

82. As a "mortgage broker" as defined by ORC sec. 1322.01(E), Defendant MOTION is subject to the requirements of said law. As set forth above, the Defendants knowingly concealed and misrepresented information which is required to be disclosed pursuant to Federal Statutes and Regulations.

83. Defendants MOTION and GROBER entered into the mortgage loan transaction the subject hereof with full knowledge that Plaintiffs did not quality for the loan program after the expiration of the initial 2-year "teaser" rate, and that Plaintiffs would not be able to repay their obligation in full.

84. Defendants MOTION and GROBERA fraudulently induced Plaintiffs into signing a "bait and switch" mortgage loan package which included a legally unconscionable loan with full knowledge that same was contrary to applicable law and public policy.

85. The intentional concealment and material misrepresentations of Defendants MOTION and GROBER were made with knowledge of their falsity and, under the circumstances, maliciously and with reckless disregard to the rights of the Plaintiffs in connection with the overall inter-temporal transaction being part of the Defendants' predetermined process of reselling the loan to an aggregator and ultimate creation of a

CMO utilizing Plaintiffs' mortgage as part of a tranche in a REMIC security.

86. Plaintiffs, not being investment bankers, securities dealers, mortgage lenders, mortgage brokers, or mortgage lenders, reasonably relied upon the representations of the Defendants in agreeing to execute the mortgage loan documents.

87. Defendants MOTION and GROBER are thus liable to Plaintiffs for an amount of damages to be determined at time of trial pursuant to ORC sec. 1322.11, 1322.00(A)(1-3) and a statutory injunction pursuant to ORC sec. 1322.11(B)(A), as a result of their violations ORC sec. 1322.07(B)(C).

## COUNT VII: FRAUDULENT MISREPRESENTATION

88. Plaintiffs reaffirm and reallege paragraphs 1 through 51 hereinabove as if set forth more fully herein below.

89. Defendants knowingly and intentionally concealed material information from Plaintiffs which is required by Federal Statutes and Regulations to be disclosed to the Plaintiffs both before and at the closing.

90. Defendants also materially misrepresented material information to the Plaintiffs with full knowledge by Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

91. Under the circumstances, the material omissions and material misrepresentations of the Defendants were malicious.

92. Plaintiffs, not being investment bankers, securities dealers, mortgage lenders, mortgage brokers, or mortgage lenders, reasonably relied upon the representations of the Defendants in agreeing to execute the mortgage loan documents.

93. Had Plaintiffs known of the falsity of Defendants' representations, Plaintiffs would not have entered into the transactions the subject of this action.

94. As a direct and proximate cause of the Defendants' material omissions and material misrepresentations, Plaintiffs have suffered damages.

## COUNT VIII: BREACH OF FIDUCIARY DUTY

95. Plaintiffs reaffirm and reallege paragraphs 1 through 51 hereinabove as if set forth more fully herein below.

96. Defendants, by their actions in contracting to provide mortgage loan services and a loan program to Plaintiffs which was not only to be best suited to the Plaintiffs given their income and expenses but by which Plaintiffs would also be able to satisfy their obligations without risk of losing their home, were "fiduciaries" in which Plaintiffs reposed trust and confidence, especially given that Plaintiffs were not and are not investment bankers, securities dealers, mortgage lenders, mortgage brokers, or mortgage lenders.

97. Defendants breached their fiduciary duties to the Plaintiffs by fraudulently inducing Plaintiffs to enter into a mortgage transaction which was

contrary to the Plaintiffs' stated intentions; contrary to the Plaintiffs' interests; and contrary to the Plaintiffs' preservation of their home.

98. As a direct and proximate result of the Defendants' breaches of their fiduciary duties, Plaintiffs have suffered damages.

99. Under the totality of the circumstances, the Defendants' actions were willful, wanton, intentional, and with a callous and reckless disregard for the rights of the Plaintiffs justifying an award of not only actual compensatory but also exemplary punitive damages to serve as a deterrent not only as to future conduct of the named Defendants herein, but also to other persons or entities with similar inclinations.

## COUNT IX: UNJUST ENRICHMENT

100. Plaintiffs reallege and reaffirm paragraphs 1 through 51 hereinabove as if set forth more fully herein below.

101. Defendants had an implied contract with the Plaintiffs to ensure that Plaintiffs understood all fees which would be paid to the Defendants to obtain credit on Plaintiffs' behalf and to not charge any fees which were not related to the settlement of the loan and without full disclosure to Plaintiffs.

102. Defendants had full knowledge that a "bait and switch" adjustable rate predatory mortgage with an increase of 1.2% in the interest rate due to the YSP paid to the Broker for the "up sell" was not in the Plaintiffs' best interests, particularly as Defendants knew, at all times material, that

Plaintiffs did not and could not qualify for the specific type of loan which was "approved".

103. Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate and YSP fee unrelated to the settlement services provided at closing.

104. Defendants have been unjustly enriched at the expense of the Plaintiffs, and maintenance of the enrichment would be contrary to the rules and principles of equity.

105. Plaintiffs thus demand restitution from the Defendants in the form of actual damages, exemplary damages, and attorneys' fees.

## COUNT X: CIVIL CONSPIRACY

106. Plaintiffs reaffirm and reallege paragraphs 1 through 51 hereinabove as if set forth more fully herein below.

107. In connection with the application for and consummation of the mortgage loan the subject of this action, Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiffs.

108. Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiffs.

109. The actions of the Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiffs.

110. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches of fiduciary duties, Plaintiffs have suffered damages.

111. Plaintiffs thus demand an award of actual, compensatory, and punitive damages.

## COUNT XI:  CIVIL ACTION FOR VIOLATIONS OF OHIO RICO STATUTE

112. Plaintiffs reaffirm and reallege paragraphs 1 through 51 hereinabove as set forth more fully herein below.

113. This claim is being brought by Plaintiffs pursuant to ORC sec. 2929.32 and 2929.34.

114. ORC sec. 2929.34 authorizes the institution of a civil action for violations of ORC sec. 2929.32, including the collection of an unlawful debt pursuant to a pattern of corrupt activity (ORC sec. 2929.32(a)(1)), and the acquisition of an interest in real property through a pattern of corrupt activity (ORC sec. 2929.32(a)(2)).

115. As set forth above, Defendants, who are "persons" within the statutory scheme, have engaged in a pattern of corrupt activity in order to not only seek the collection of an unlawful debt from Plaintiffs, but also to acquire an interest in real estate consisting of the Plaintiffs' primary residence.

116. The conspiracy the subject of this action has existed from January 7, 2004 to the present, with the injuries and damages resulting therefrom being continuing.

117. Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiffs constitutes an "enterprise", with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiffs through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents.

118. Each of the Defendants is an "enterprise Defendant" within the statutory scheme.

119. As a direct and proximate result of the actions of the Defendants, Plaintiffs have and continue to suffer damages.

120. Pursuant to ORC sec. 2929.34(B)(1), the court may order the Defendants' divestiture in any interest in real property, and Plaintiffs request the entry of Final Judgment against Defendants divesting their interest in the real property the subject of this action..

121. Pursuant to ORC sec. 2929.34(D), the Court may order injunctive relief without a showing of special or irreparable injury, and may issue a temporary injunction or temporary restraining order upon a showing of significant injury to the Plaintiff.

122. As set forth above, Plaintiffs have suffered significant injuries including the loss of their home, overpayment of fraudulent charges, damages to their credit rating, and a foreclosure.

123. Pursuant to ORC sec. 2929.34(E), Plaintiffs are also entitled to an award of three times actual damages sustained.

124. Pursuant to ORC sec. 2929.34(F), Plaintiffs are also entitled to reasonable attorneys' fees for having to bring this action.

## RELIEF SOUGHT

WHEREFORE, having set forth the above-described legally sufficient causes of actions against the Defendants, Plaintiffs pray for the immediate issuance of a Preliminary Injunction or Temporary Restraining Order precluding the foreclosure sale of their property or any other disposition of the subject property pending the determination of this action; the entry of Final Judgment against all Defendants jointly and severally in an amount not yet quantified but to be proven at trial and such other amounts to be proven at trial; an award of three times the amount of actual damages sustained; for costs and attorneys' fees; that the Court find that the transactions the subject of this action are illegal and are deemed void; that the foreclosure which was instituted be deemed and declared illegal and void and that further proceedings in connection with the foreclosure be enjoined; and for any other and further relief which is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all matters so triable as a matter of right.

Respectfully submitted,

_Jeff Barnes  By MG malvay_
W. Jeff Barnes
(*counsel to seek admission pro hac vice*)
W. J. Barnes, P.A.
1515 North Federal Highway
Suite 300
Boca Raton, Florida 33432
Telephone: (561) 864-1067
Telefax: (702) 804-8137

Maurus G. Malvasi
(Ohio Bar No.  0062757)
11 Overhill Road
Youngstown, Ohio 44512
Telephone: (330) 788-9900
Telefax: (330) 788-9265
mgmlaw48@yahoo.com

*Attorneys for Plaintiffs*

33