**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RONALD J. SMITH, et al.,** | ) | **Case No.  4:08 CV 1462** |
| | ) | |
| **Plaintiffs,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **ENCORE CREDIT CORP., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

After LaSalle Bank National Association ("LaSalle") obtained a judgment entry of foreclosure on the residence of Plaintiffs Ronald J. and Nancy L. Smith in state court, the Smiths filed this action alleging four federal law claims and seven state law claims against persons and entities related to the underlying refinancing mortgage loan transaction ("the Loan") other than LaSalle.  The Smiths seek a declaration that the Loan was illegal, rescission of the Loan, an injunction against the foreclosure sale of their residence, and damages.  Defendants have filed the following motions, which have been fully briefed and are ripe for review:

•Motion of Defendant Bear Stearns Residential Mortgage Corporation to Dismiss Plaintiffs' Complaint (**ECF No. 11**);

•Motion of Defendants Motion Financial and Ellyn Klein Grober to Dismiss Plaintiffs' Complaint (**ECF No. 14**);

•Motion of Defendant Sand Canyon Corporation F/K/A Option One Mortgage Corporation to Dismiss Plaintiffs' Complaint (**ECF No. 16**); and

> •Defendant Encore Credit Corporation's Motion to Dismiss the Complaint of Donald J. Smith and Nancy L. Smith (**ECF No. 19**).

For the reasons articulated below, the Motions are **GRANTED IN PART**, the federal law claims (Counts I through IV) are dismissed **with** prejudice, and the state law claims (Counts V through XI) are dismissed **without** prejudice.

## I.

In January 2004, the Smiths had several discussions over the telephone with agents of Defendant Motion Financial ("Motion") concerning a possible refinancing of the mortgage on their home.  (ECF No. 1 ("Compl.") ¶ 13.)  The Smiths "directed Defendant Motion to extract equity from their home for the purpose of paying credit cards and other personal loans due to a deteriorating income stream versus prior year and also to be able to fund the March, 2004 mortgage payments." (Id.)  The Smiths "believed that the best way to accomplish this would be through a fix-rate loan at the lowest interest rate for which [they] qualified and with a monthly payment plan which [they] could afford given their financial situation as to income and expenses." (Id.)  On January 7, 2004, Defendant Ellyn Klein Grober allegedly represented to the Smiths that they qualified for a fixed rate mortgage loan in the principal amount of $528,500. (Id. ¶ 14.)  Grober prepared a Uniform Residential Loan Application indicating that the Smiths were applying for a fixed rate loan, which the Smiths executed on January 9, 2004.  (Id.)  Grober also provided the Smiths with an early Truth In Lending Statement setting forth the fixed rate mortgage loan.  In February 2004, Grober informed the Smiths that the fixed rate loan they initially qualified for would not provide a sufficient loan-to-value ratio to enable them to obtain a cash-out refinance program.  (Compl. ¶ 17.)  Grober told them that the only loan program available to them to obtain a cash-out refinance would be a program with a two-year fixed rate

-2-

and an adjustable rate every six months thereafter that required an appraised value of the property of $630,000. (Id.) Grober arranged for an appraisal that valued the residence at $570,000 – insufficient to provide cash to the Smiths. (Id. ¶ 20.) She arranged a second appraisal which valued the residence at $630,000 – sufficient to provide a cash payout. (Id. ¶ 22.) With less than two weeks remaining before the Smiths would default on numerous obligations (including, presumably, their March 2004 mortgage payment), the Smiths "agreed to proceed with the closing on the adjustable rate mortgage." (Compl. ¶ 23.) On March 5, 2004, Defendants Motion and Encore Credit Corporation ("Encore") executed the refinancing Loan with the Smiths. (Id. ¶ 24.) The Smiths allege that the Loan, which was the result of predatory lending practices, "was sold to a securities firm" immediately after the closing and, within the Loan year, "ended up as collateral for Bear Stearns Asset-Backed Securities LLC Asset-Backed Certificates Series 2004-HES." (Id. ¶ 28(g).)

The Smiths subsequently defaulted on the loan and, on October 18, 2005, LaSalle, as Trustee for Certificate Holders of Bear Stearns Asset-Backed Securities LLC Asset-Backed Certificates Series 2004-HES ("LaSalle"), filed a foreclosure action against the Smiths and others in the Court of Common Pleas for Mahoning County, Ohio, in Case No. 2005-CV-3869 ("the Foreclosure Case"). (Compl. ¶ 49.) Nancy Smith filed an answer on December 29, 2005, and Ronald Smith filed an answer on January 10, 2006.

After an evidentiary hearing, the state court granted LaSalle's motion for summary and default judgment, and entered judgment against the Smiths on January 12, 2007. (ECF No. 12-2 at 1.) The state court decreed that if the amount then due on the loan was not

fully paid within three days of the judgment, the right of the Smiths in the property "shall be foreclosed and [ ] an order of sale may be issued to the Mahoning County Sheriff, directing him to appraise, advertise in a paper of general circulation within the County and sell said premises as upon execution and according to law free and clear of the interest of all parties to this action." (Id. at 4.)

In August 2007, LaSalle filed a motion to withdraw the order of sale scheduled for August 7, 2007 upon the representation that Ronald Smith had filed a Chapter 13 bankruptcy proceeding on August 3, 2007.  The court granted LaSalle's request to have the order of sale returned by the sheriff unexecuted and granted leave to LaSalle to file an alias order of sale.  On October 15, 2007, the state court granted LaSalle's request to vacate the bankruptcy stay, reinstate the case to the active docket and for leave to continue with the prosecution of the case.

On June 17, 2008, the Smiths filed this case in federal court asserting a laundry list of state and federal claims against Defendants Grober, Motion, Encore, Bear Stearns Residential Mortgage Corporation ("BSRMC") and Option One Mortgage Corporation (which is alleged to be in an agency relationship with Encore, Compl. ¶ 4) for their predatory lending practices.[1]  Specifically, the Smiths allege claims for violation of the Homeowners Equity Protection Act, 15 U.S.C. § 1639, the Real Estate Settlement Procedures Act , 12 U.S.C. § 2601, the Truth in Lending Act, 15 U.S.C. § 1605, the Fair Credit Reporting Act, 15 U.S.C. § 1681, the Ohio Consumer Protection Act, O.R.C. Chapter 1345, the Ohio Mortgage Brokers Act , O.R.C. Chapter 1322, and the Ohio Racketeer Influenced and Corrupt Organizations ("RICO") Act,

---

[1]The Court notes in passing that the Smiths defaulted on the Loan well before entering the adjustable rate portion of their refinancing program.

-4-

O.R.C. § 2929.32.  They also allege claims of fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, and civil conspiracy.  The Smiths ask this Court to treat the Complaint as a "Notice of Rescission" and declare the refinancing transaction illegal and void in the first instance, rescind the Loan, and enjoin the foreclosure sale of their home.  They seek damages as well.

On July 21, 2008, Defendant BSRMC filed the first motion to dismiss, followed by the other pending motions to dismiss.  Defendants all argue that the Court lacks the jurisdiction to granted the requested declaratory and injunctive relief based on the *Rooker-Feldman* doctrine and the Anti-Injunction Act, that the Court should abstain from adjudicating the case based on *Younger v. Harris*, 401 U.S. 37 (1971), and that issue preclusion bars adjudication of the alleged claims.  They argue, in the alternative, that most of the claims are time-barred and all of them fail to state a claim for which relief can be granted.  Having reviewed the motions, the briefs and the record, the Court is prepared to issue its ruling.

## II.

Defendants move for dismissal for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  Defendants make a facial attack on the subject matter jurisdiction of this Court.  In reviewing a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss.  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *see also Nat'l Ass'n of Minority Contractors v. Martinez*, 248 F.Supp.2d 679, 681 (S.D. Ohio 2002) (applying standard).

When ruling on a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint liberally in a light most favorable to the non-moving party. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). The Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007) (*citing Bell Atl. Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (citations omitted)). *See also*, *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) (en banc) (viewing a complaint "through the prism of Rule 12(b)(6) [requires] us to accept all of its allegations and all reasonable inferences from them as true") (*citing Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002)). When reviewing a Rule 12(b)(6) motion to dismiss, the Court must "determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Daubenmire v. City of Columbus*, 507 F.3d 383, (6th Cir. Nov. 6, 2007) (quoting *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001)). In order to preclude dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations which comprise all of the essential, material elements necessary to sustain a claim for relief under some viable legal theory. *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998).

### III.

Defendants argue that the district court lacks subject matter jurisdiction to adjudicate the claims and grant the requested relief based on the *Rooker-Feldman* doctrine, issue preclusion, the Anti-Injunction Act, and the *Younger* abstention doctrine. The Court will address each argument in turn.

### A.    *Rooker-Feldman*

First, Defendants argue that the *Rooker-Feldman* doctrine prohibits this federal district court from granting the Smith's request for declaratory and injunctive relief (i.e., declaring the refinancing Loan illegal and void, and enjoining the foreclosure sale of their residence). The Smiths disagree.

The *Rooker-Feldman* doctrine stands for the proposition that federal district courts generally lack subject matter jurisdiction to review state court judgments. It derives from two Supreme Court decisions: *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923).

For years, a standard employed by the Sixth Circuit in determining whether *Rooker-Feldman* barred federal court adjudication of claims was whether the claims in the federal case were "inextricably intertwined" with claims previously asserted in a state court proceeding. *See, e.g., Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 937-38 (6th Cir. 2002)*; Kafele v. Lerner, Sampson & Rothfuss*, LPA, 161 Fed. Appx. 487, 489-90 (citing *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998)). "Where federal relief [could] only be predicated upon a conviction that the state court [was] wrong," the federal claims were determined to be inextricably intertwined with the state court claims and thus barred by *Rooker-Feldman* from adjudication in federal court. *Id.*

After various circuits adopted differing interpretations regarding the breadth of *Rooker-Feldman*, the Supreme Court recently took the opportunity to clarify the doctrine's limited scope. *In re Hamilton*, 540 F.3d 367-371 (6th Cir. 2008) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280 (2005)).

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind
> from which the doctrine acquired its name: cases brought by state court losers
> complaining of injuries caused by state-court judgments rendered before the
> district court proceedings commenced and inviting district court review and
> rejection of those judgments.

*Id*. (quoting *Exxon*, 544 U.S. at 284).

Following *Exxon*, the Sixth Circuit further refined the doctrine, distinguishing between plaintiffs who bring an impermissible attack on a state court judgment, in which case *Rooker-Feldman* does apply – and plaintiffs who assert independent claims before the district court, in which case *Rooker-Feldman* does not apply.  *Pittman v. Cuyahoga County Dep't of Children & Family Serv.*, 241 Fed. Appx. 285, 287 (6th Cir. 2007) (citing *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)).  The Sixth Circuit stated that the pertinent inquiry is whether the "source of the injury" upon which a plaintiff bases his federal claim is the state court judgment:

> If the source of the injury is the state court decision, then the *Rooker-Feldman*
> doctrine would prevent the district court from asserting jurisdiction.  If there is
> some other source of injury, such as a third party's actions, then the plaintiff
> asserts an independent claim.

*McCormick*, 451 F.3d at 394-95.  Thus, the Sixth Circuit concluded that jurisdiction is proper if a plaintiff presents an independent claim in federal court, "albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party."  *Id*. (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).  In fact, the Sixth Circuit recently reversed a ruling that *Rooker-Feldman* barred claims (including a request for rescission of a mortgage loan) brought by a mortgagor against individuals involved in state mortgage foreclosure proceedings where the source of injury was the defendants' conduct preceding the foreclosure decree.  *Brown v. First Nationwide Mortg. Corp*., 206 Fed. Appx. 436 (6th Cir. 2006).  *See also Lawrence v.*

*Welch*, 531 F.3d 364, 369 (6th Cir. 2008) (holding that claims that certain defendants committed fraud and misrepresentation in a state probate proceeding did not allege an injury caused by state court judgment and were not barred by *Rooker-Feldman*; however, claims that the probate court's order of receivership violated the plaintiff's constitutional rights were barred because "the count alleges that the state court order itself was illegal and harmed plaintiff"); *Pittman*, 241 Fed. Appx. at 288 (holding that claims of improper conduct by employees of a family services agency were not barred by *Rooker-Feldman* because their actions were independent from a juvenile court's custody decision; plaintiff did not seek reversal of the custody order); *Loriz v. Connaughton*, 233 Fed. Appx. 469, 474-75 (6th Cir. 2007) (holding that a landowners' claims challenging a zoning decision as unconstitutional were barred by *Rooker-Feldman*).

Here, the Smiths allege that Defendants violated the Homeowner Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, by charging excessive fees, expenses and costs exceeding 10% of the financed amount (Count 1); Defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, by accepting charges for services not performed (Count 2); Defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1605, by failing to disclose certain charges associated with the Loan (Count 3); Defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), by failing to undertake an investigation of disputed credit information (Count 4); Defendants violated the Ohio Consumer Protection Act, O.R.C. § 1345.01 by failing to disclose, altering and misrepresenting material terms of the Loan (Count 5); Defendants Motion and Grober violated the Ohio Mortgage Brokers Act by misrepresenting and concealing the knowledge that the Smiths would not qualify for the loan after the first two years; Defendants fraudulently misrepresented the Loan terms

(Count 7); Defendants breached their fiduciary duty to the Smiths (Count 8); Defendants enjoyed unjust enrichment by their unlawful conduct (Count 9); Defendants engaged in a civil conspiracy (Count 10); and Defendants violated the Ohio RICO statute, O.R.C. § 2929.32, by their fraudulent conduct (Count 11).  These are <u>all</u>  independent claims against third parties where the source of injury is not the state court foreclosure judgment itself but the alleged conduct of these particular parties leading up to and encompassing the refinancing transaction.  Because the source of injury is not the state court judgment, *Rooker-Feldman* does not bar adjudication of these claims in federal court.[2]

## B.    Issue Preclusion

Next, Defendants argue that issue preclusion prevents the Smiths from seeking a declaration that the Loan was illegal and void, rescission of the Loan, and termination of the Loan documents.  The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give state court judgments the same preclusive effect that the state would afford such judgment. *McCormick*, 451 F.3d at 397 (citing *Exxon*, 125 S.Ct. at 1527).  Ohio's doctrine of issue preclusion, also known as collateral estoppel, holds that a party asserting issue preclusion has the burden of establishing the following elements:

> (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action;

> (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;

---

[2]Given the limited scope of *Rooker-Feldman*, the Court is concerned that future plaintiffs may use the federal courts to collaterally attack state court judgments, as in this case.  The Sixth Circuit acknowledged this problem, but noted that "this is an inevitable byproduct of the Supreme Court's confining the scope of *Rooker-Feldman* in *Exxon Mobil*, 544 U.S. at 284. . .." *Pittman*, 241 Fed. Appx. at 289.

(3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and

(4) the issue must have been identical to the issue involved in the prior suit.

*Dye v. City of Warren*, 367 F. Supp. 2d 1175, 1184-85 (N.D. Ohio 2005); *see also, Knott v. Sullivan*, 418 F.3d 561, 568 (6th Cir. 2005); *State ex rel. Stacy v. Batavia Local Sch. Dist. Bd. of Educ.*, 779 N.E.2d 216, 219 (Ohio 2002) ("[T]hat a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different.").  Issue preclusion cannot be invoked because *similar* issues were previously litigated and decided; rather, the *same* issue must have been actually litigated and decided.  *See Thompson v. Wing*, 637 N.E.2d 917 (Ohio 1994); *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 987 (Ohio 1983) ("Collateral estoppel precludes relitigation only when the identical issue was actually decided in the former case.").

Defendants argue that issue preclusion is proper because the issue of the Loan's validity was actually litigated and decided in the Foreclosure case when the state court determined that LaSalle was owed money on the note in connection with the Loan.  Defendants reason that the Smiths' claims are precluded since the previous and present issues both encompass the broad topic of the Loan's validity.  The Smiths counter that the issues in the Complaint were not "passed upon or determined" by the Mahoning County Court.  Instead, the issues raised here deal with fraud, violations of federal lending laws, violations of the Ohio

-11-

Consumer Practices Act, violations of the Ohio RICO Act and conspiracy, all of which are distinct from the question of the Loan's validity.

Based on case law, the Court cannot apply the broad application of the term "issue" that is espoused by Defendants to the claims in this case.  The Court finds that Defendants have failed to show that the claims in the Complaint are identical to issues actually litigated and decided by the Mahoning County Court in the Foreclosure case.

### C.   *Younger* Abstention

Defendants argue that the Court must abstain from adjudicating this case based on *Younger v. Harris*, 401 U.S. 37 (1971).  Under the abstention doctrine articulated in *Younger*, "when state proceedings are pending, principles of federalism dictate that the constitutional claims should be raised and decided in state court without interference by the federal courts." *Doscher v. Menifee Circuit Court*, 75 Fed. Appx. 996, 997 (6th Cir. 2003) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987)).  "[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States."  *Leatherworks P'ship v. Boccia*, 245 Fed. Appx. 311, 317 (6th Cir. 2007) (citing *New Orleans Pub. Servs., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 368 (1989)).  In order for a federal district court to abstain from hearing a claim pursuant to *Younger*, it must find that (1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity in the state proceeding to raise constitutional challenges.  *Id*. (citing *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)).  The court should proceed deliberately "to ensure that abstention remains 'the exception, not the rule.'"  *Id*. (quoting *New Orleans*, 491 U.S. at 359, in turn quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S.

-12-

229, 236 (1984)).  Because the Smiths have not raised any constitutional challenges to the foreclosure judgment, *Younger* does not require this Court to abstain from adjudicating the claims before it.

### D.    Anti-Injunction Act

Defendants argue that the Anti-Injunction Act, 28 U.S.C. § 2283, prohibits the Court from issuing the requested injunctive relief.  The Court agrees.

The Anti-Injunction Act states, in full, that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.  The Supreme Court has acknowledged that the Act creates "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of the three specifically defined exceptions."  *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286-87 (1970).  The three exceptions are: (1) where Congress expressly authorizes, (2) where necessary in aid of the court's jurisdiction, or (3) where necessary to protect or effectuate the court's judgments.  *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004); *see* 28 U.S.C. § 2283.  Once the Anti-Injunction Act defense is raised, the party pursuing the injunction bears the burden of establishing that the injunction falls within one of the exceptions.  *See id*.

The Smiths contend that the Court can enjoin the foreclosure sale because the Ohio RICO statute expressly authorizes injunctive relief.  (ECF No. 20, at 5-6.)  To qualify as an "expressly authorized" exception to the Anti-Injunction Act, the test is "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity,

-13-

could be given its intended scope only by the stay of a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 238 (1972); *see also, Atlantic Coast Line R.R.,* 398 U.S. at 297 ("Any doubts as to the propriety of a federal injunction. . . should be resolved in favor of permitting the state courts to proceed . . ."). The Ohio RICO statute permits an injunction, but the statute was not "expressly authorized" by an Act of Congress. Therefore, it does not fall within any exception to the Anti-Injunction Act.

Thus, to the extent that the Smiths are asking the federal district court to stay the Foreclosure case, the request is moot because the state court has stayed the Foreclosure case pending the adjudication of claims presented in this federal case. To the extent that the Smiths are asking the federal district court to enjoin the foreclosure sale ordered by the state court, the federal district court is barred from providing that relief by the Anti-Injunction Act.

## IV.

Defendants argue that all the federal claims and most of the state law claims are time-barred. The Court finds that all the federal claims are barred by the relevant statutes of limitations for the following reasons.

### A.    HOEPA (Count I) and TILA (Count III)

Count I alleges that "Defendants"[3] engaged in predatory lending practices, charged "excessive fees, expenses and costs which exceeded more than 10% of the amount financed" and failed to make required disclosures to the Smiths no later than 3 days prior to

---

[3]The Court takes this opportunity to mention that the Smiths' referral to "Defendants" as targets of all their allegations and claims is unduly vague. It is difficult to determine, for instance, how BSMRC can be liable for failure to provide the proper truth-in-lending disclosures on March 5, 2004 or what role Option One Mortgage plays in this case at all.

closing in violation of HOEPA, 15 U.S.C. § 1639.  Count III alleges that Defendants failed to disclose certain charges incident to the extension of credit to the Smiths that were associated with the loan transaction on the Truth in Lending Statement and calculated the annual percentage rate based upon improperly calculated, undisclosed or inconsistent amounts – all in violation of TILA statutes and regulations.

The TILA is a federal consumer protection statute intended to promote the informed use of credit by requiring certain uniform disclosures from creditors.  *In re Community Bank of Northern Virginia*, 418 F.3d 277, 303-04 (3d Cir. 2005) (citing15 U.S.C. § 1607, as implemented by Regulation Z, 12 C.F.R. §§ 226.1 *et seq.*)  Creditors who make loans secured by a borrower's principal dwelling are required to provide borrowers with disclosures such as the annual percentage rate, the finance charge, the amount financed, the total payments, and the payment schedule.  *Id.* at 304 (citing 12 C.F.R. § 226.23) (quotations omitted).  The HOEPA, enacted as an amendment to the TILA, creates a special class of regulated loans that are made at higher interest rates or with excessive costs and fees.  *Id.*  These loans are not only subject to the restriction on terms commonly used by predatory lenders to manipulate the cost of the loans, but are also subject to special disclosure requirements.  *Id.* (citing 15 U.S.C. § 1639).  Under 15 U.S.C. § 1640(e), TILA and HOEPA must be brought "within one year from the date of the occurrence of the violation."

Defendants argue that the HOEPA and TILA claims are barred by the relevant one-year statute of limitations.  These claims, which are based on the failure of Defendants to disclose certain material information leading up to or at the time the Loan transaction was

entered, accrued no later than the closing date of March 5, 2004.  As such, the claims expired one year later on March 5, 2005.

Rather than address the many and varied claims independently, the Smiths generally assert that Defendants' pattern "during the life of the mortgage loan, of defrauding the Smiths including failing to credit payments made, incorrectly calculating interest on the accounts and failing to accurately debit fees" entitles all of their claims to equitable tolling.  Putting aside for the moment the dubious question of whether accounting errors fall within the ambit of TILA or HOEPA (or RESPA or FCRA for that matter), it is true that the HOEPA and TILA limitations statute may be subject to equitable tolling.  *Borg v. Chase Manhattan Bank USA, NA*, 247 Fed. Appx. 627, 633 (6th Cir. 2007).  When equitable tolling is applied, the one-year period begins to run when the borrower discovers or had reasonable opportunity to discover the fraudulent concealment of charges.  *Id.* (citing *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984)).  The Smiths argue that there was no practical way for them to know about the alleged fraudulent concealment of charges prior to being sued for foreclosure.   Giving the Smiths every benefit of the doubt (i.e., assuming that the statute was tolled until the foreclosure action was commenced on October 18, 2005 or until Nancy Smith filed her answer on December 29, 2005 and Ronald Smith filed his answer on January 10, 2006), the Smiths still had until October 18, 2006 (or December 29, 2006 or January 10, 2007) to file their TILA and HOEPA claims against the appropriate entities and failed to do so.

Moreover, "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f).  The Supreme Court has interpreted this section to be an absolute three-year

-16-

bar to claims for rescission under TILA or HOEPA.  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411-12 (1998) (holding that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period.").  Accordingly, the Smiths' right to rescission of the refinancing loan under TILA and HOEPA was absolutely statutorily extinguished on March 5, 2007.

         The Court notes in passing that nothing prevented the Smiths from adding these Defendants to their foreclosure case and bringing these claims (or any of the other claims) against them in the course of those proceedings.  See, e.g., 15 U.S.C. § 1536(f).  For all these reasons, Counts I and III are barred by the statute of limitations.

### B.    RESPA (Count II)

         Count II alleges that Defendants' conduct in accepting charges for settlement services not rendered violates 12 U.S.C. § 2607 of the RESPA, and seek an amount equal to three times the amount of charges paid for "settlement services" under § 2607(d)(2).  Among the abusive practices Congress sought to eliminate through the enactment of RESPA was the unlawful payment of referral fees, kickbacks and other unearned fees.  *Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 981 (11th Cir. 2003) (citation omitted); *see also* 12 U.S.C. §§ 2601(b), 2607.  Claims for violations of § 2607 of the RESPA must be brought within 1 year of the violation.  12 U.S.C. § 2614.  There is no dispute that this claim accrued on March 5, 2004 and that it expired on March 5, 2005.  The Smiths acknowledge that the Sixth Circuit has yet to decide whether equitable tolling applies to claims brought under § 2607 of the RESPA.  *See, e.g., Egerer v. Woodland Realty, Inc.*, No. 1:06 CV 789, 2007 WL 3467263 at *4 (W.D. Mich. Nov. 13, 2007).  Even assuming that equitable tolling applies, it would fail here for the same reasons set forth respecting the TILA and HOEPA claims.  Accordingly, Count II is time-barred.

-17-

## C.    FCRA (Count IV)

In Count IV, the Smiths assert that "Defendants wrongfully, improperly, and illegally reported negative information as to the Smiths to one or more credit reporting agencies" and that the Smiths are thereby entitled to maintain a private cause of action against Defendants pursuant to § 1681s-2(b).  Compl. ¶¶ 73, 74.  The Smiths claim that they are entitled to recover damages for Defendants' alleged negligent non-compliance with the FCRA under § 1681o, and punitive damages for Defendants' alleged willful noncompliance with the FCRA under § 1681(n)(a)(2).  Id. ¶¶ 75, 76.

Congress enacted the FCRA as part of the Consumer Credit Protection Act "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 127 S.Ct. 2201 (2007) (citing 84 Stat. 1128, 15 U.S.C. § 1681 and *TRW Inc. v. Andrews*, 534 U.S. 19 (2001)).  The Sixth Circuit has explained that the FCRA is aimed at protecting consumers from inaccurate information in consumer reports and establishing credit reporting procedures that utilize correct, relevant, up-to-date information in a confidential and responsible manner.  *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998) (citation omitted).

Under § 1681s-2(b), those who furnish information to credit reporting agencies have the obligation to undertake an investigation upon receipt of notice of dispute regarding credit information that they had previously furnished.  Defendants contend that a claim for violation of § 1681s-2(b) is time-barred by the relevant statute of limitations.  Furthermore, Defendants argue that the Smiths have failed to state a claim under § 1681s-2(b).

Violations of the FCRA may be brought no later than the earlier of (1) two years after the date of discovery by the plaintiff that is the basis for such liability or (2) five years after the date on which the violation that is the basis for such liability occurs.  15 U.S.C. § 1681p. The Smiths have not alleged the date on which any alleged § 1681s-2(b) violation occurred. Indeed, any claims based violations of the FCRA prior to June 17, 2006 are time-barred.

Furthermore, this claim fails to state a claim for which relief can be granted for two reasons.  First, it's not entirely clear in the Sixth Circuit whether a consumer has a private cause of action against a furnisher of information under § 1681s-2(b).  *Compare Downs v. Clayton Homes, Inc.*, 88 Fed. Appx. 851, 853 (6th Cir. 2004) ("If it is assumed that a private right of action exists under § 1681s-2(b), . . . ") and *Zamos v. Asset Acceptance, LLC*, 423 F.Supp.2d 777 (N.D. Ohio 2006) ("[D]isputes currently exist among the courts as to whether the FCRA creates a private cause of action for a consumer against a furnisher of credit information.") *with Bach v. First Union Nat'l Bank*, 149 Fed. Appx. 354, 359-60 (6th Cir. 2005) ("While a consumer cannot bring a private cause of action for a violation of a furnisher's duty to report truthful information, a consumer may recover damages for . . . violation of . . . § 1681s-2(b)(A)-(D).") and *Sweitzer v. Am. Express Centurion Bank*, 554 F.Supp.2d 788, 794 (noting that "[t]he majority consensus among the courts that have addressed the issue is that . . . § 1681s-2(b) created a private right of action by a consumer against a data furnisher," and declining to follow the minority view espoused in *Zamos*).

Second, assuming for the moment that there is such cause of action, the Smiths have not alleged that they notified a credit reporting agency that (1) they had a dispute over inaccurate information on their credit report that was furnished to the agency by any of the

Defendants, (2) the agency notified Defendants of the dispute, and (3) Defendants failed to undertake an investigation of the dispute.  The Smiths assert only that "Defendants" negligently or willfully furnished inaccurate information to the credit reporting agencies.  These allegations are insufficient to state a claim for relief, if there is such a thing,  under § 1681s-2(b).

For all these reasons, Count IV is dismissed.

## V.

The Smiths filed this case in federal court based on the Court's federal question jurisdiction over the four federal claims, 28 U.S.C. § 1331, and supplemental jurisdiction over the seven state-law claims, 28 U.S.C. § 1367(a).  Compl. ¶¶ 8, 10.  Because the Court has dismissed the federal claims, the Court declines to exercise its supplemental jurisdiction over the state-law claims.  See 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.")  Thus, the state-law claims (Counts V through XI) are hereby dismissed without prejudice.

## VI.

In summary, the Court **GRANTS IN PART** the pending Motions as follows.  The Court grants the pending Motions with respect to Counts I through IV and dismisses those claims with prejudice for reasons set forth in Section III.  The Court dismisses without prejudice Counts V through XI for the reason articulated in Section IV.  The Court also notes that, if the

-20-

federal claims were not dismissed, the Court would be unable to grant the Smiths' request to

enjoin the foreclosure sale of their home as ordered by the state court by the federal Anti-

Injunction Act.

      **IT IS SO ORDERED.**


                 */s/Dan Aaron Polster    December 9, 2008*
                 **Dan Aaron Polster**
                 **United States District Judge**